LINDA DEERHAKE, Adm'r of the Estate of Kevin Deerhake, *et al.*, Plaintiffs-Appellees, v. DuQUOIN STATE FAIR ASSOCIATION, INC., Defendant-Appellant.

Fifth District   No. 5—87—0540

Opinion filed June 22, 1989.

376

Cornelius Thomas Ducey, Jr., of Ducey, Feder & Ducey, Ltd., of Belle-ville, and Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Michael G. Bruton, of counsel), for appellant.

Phillip J. Kardis and Robert S. Forbes, both of Kardis & Forbes, P.C., of Alton, for appellee Gerald A. DeGerlia.

Bernard J. Ysursa, of Cook, Shevlin, Keefe & Ysursa, of Belleville, for appellee Linda Deerhake.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On January 30, 1987, a Perry County jury awarded plaintiff Linda Deerhake (Deerhake) $1,100,000 reduced by 30% to $770,000 for her decedent husband's contributory negligence, and awarded plaintiff Gerald DeGerlia (DeGerlia) $2,155,500 reduced by 18% to $1,767,510 for his contributory negligence. After the trial court denied the post-trial motion of defendant, DuQuoin State Fair Association, Inc., defendant appealed. This court affirms with directions.

The record reveals the following facts. Defendant was scheduled to hold an American Motorcycle Association (AMA) sanctioned motorcycle race on Sunday, July 27, 1980. As the spectators gathered on the fairgrounds the Friday and Saturday before the race, defendant permitted them to camp on the grounds for a fee. Defendant also charged an admission to see the sanctioned race. However, due to the rain on July 27, the race was cancelled. Although a majority of the crowd left, some of the spectators stayed to watch unsanctioned drag races along Gate 2 Road on defendant's property. During the drag races, Deerhake's husband, Kevin Deerhake, was killed, and DeGerlia was seriously injured in a motorcycle accident.

On August 11, 1981, DeGerlia filed a complaint against defendant. On July 26, 1982, Linda Deerhake filed a complaint against defendant for wrongful death of her deceased husband, Kevin Deerhake. The cases were consolidated for a jury trial. On January 30, 1987, the jury awarded Deerhake $1,100,000 reduced by 30% to $770,000 for her decedent's contributory negligence, and awarded DeGerlia $2,155,500 reduced by 18% to $1,767,510 for his contributory negligence. After the trial court denied defendant's post-trial motion, defendant appealed. Since the record is voluminous and defendant raises many issues, this court will consider all facts regarding each issue as they arise.

Before this court can proceed to discussing the various issue, it must dispose of various subissues. These subissues are important to the discussion of the first issue regarding the duty of defendant to plaintiffs.

■ Defendant argues that the trial court erred when it allowed the jury to consider evidence that defendant made a profit from the

sanctioned motorcycle event. Defendant argues that for such evidence to be relevant, it must tend to prove a matter in controversy. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519, 468 N.E.2d 1228, 1235.) This court finds that the trial court properly denied defendant's motion *in limine* regarding any profits raised from the race event because the admission fees to the sanctioned races ($8 camping fee; $12 grandstand admission, and parking fee) offered evidence of the invitee status of plaintiffs and the reasonableness of requesting defendant to hire more security or purchase equipment.

Defendant also argues that the trial court erred when it prohibited defendant from inquiring about plaintiff DeGerlia's prior motorcycle accidents. This court holds that the trial court properly denied defendant's request to present evidence of DeGerlia's prior motorcycle accidents as evidence of knowledge of the dangerousness of driving a motorcycle at "certain" speeds. As a general rule, the trial court has the discretion to prohibit admission of evidence which is otherwise admissible but whose probative value is outweighed by the danger of prejudice or confusion. (*Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 911, 469 N.E.2d 708, 722.) In this case, the admission of DeGerlia's prior accidents on a motorcycle would cause confusion because the issue is defendant's duty to a business invitee regarding highly dangerous, negligent and criminal activities of third parties occurring on defendant's property. Most importantly, DeGerlia was not operating the motorcycle at the time of the accident.

At this point, this court addresses another subissue regarding the admission of testimony concerning subsequent measures taken to prevent drag racing on defendant's property. This court finds that defendant cannot allege error because defendant opened the door. On direct examination, plaintiff did not elicit any such testimony from witness Ray Davenport. Defendant's cross-examination and re–cross-examination proceeded to elicit this evidence. Furthermore, the other alleged errors occurred after defendant elicited the initial response regarding subsequent measures. Since defendant used the testimony in its defense, it cannot now complain of error. Plaintiffs' counsel on direct did not question the witness on why he did not go to the races after 1982. It was defendant's counsel who asked why the races diminished.

Defendant argues that the trial court erred when it allowed introduction of prior motorcycle accidents on the fairgrounds. It is well established that evidence of prior accidents, occurring under substantially similar conditions, is admissible to show the existence of a hazard and · to show that defendant had notice of its existence.

(*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373; *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534.) Defendant specifically argues that there is a lack of substantial similarity.

■ This case involves a motorcycle drag race occurring on the fairgrounds at which plaintiffs were injured when a motorcycle (decedent's) went out of control and was unable to stop. In 1979, Deputy Sheriff James Wessler witnessed an accident involving motorcycle drag racing on the same road and area. In the 1979 accident, a motorcyclist was drag racing, lost control and was unable to stop at the end of the road, colliding with the gate. This court finds sufficient similarity in accidents, and therefore defendant's position is without merit.

■ Defendant also argues that the introduction of a 1979 newspaper article titled, "Unauthorized Racing Claims 4 Casualties," was highly prejudicial and lacked proper foundation regarding substantial similarity. The court allowed the evidence on the issue of notice. The article was also used in part to refresh the recollection of Lyndal Graff, was not read to the jury, and did not go to the jury. The article mentioned not only the accident Deputy Sheriff Wessler saw but also another motorcycle accident occurring on the same road. The article is well within the exception to the hearsay rule for showing notice and as such the court properly admitted it. (*Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 782-83, 382 N.E.2d 831, 834.) Furthermore, the use of the newspaper article was permissible to refresh the memory of a witness. (*Clifford v. Drake* (1884), 110 Ill. 135, 136-37.) This court finds that the trial court did not err.

■ In connection with defendant's issue regarding the statements made by Lyndal Graff and printed in a newspaper article, this court finds that the issue has been waived for failure to object properly.

I

Defendant's first major issue on appeal is whether the trial court properly entered judgment against it. Defendant argues that the court should have directed a verdict for defendant or granted defendant's motion for summary judgment because it did not have a duty to protect the plaintiffs from the open and obvious dangers associated with unauthorized motorcycle drag racing. Defendant argues that whether the trial court classified plaintiffs as invitees, licensees or trespassers, it did not owe them a duty to protect them from unauthorized drag racing pursuant to sections 343 and 343A of the Restatement (Second) of Torts. Restatement (Second) of Torts §§343, 343A (1965).

However, this court finds that defendant's argument is without

merit because sections 343 and 343A are not applicable. Plaintiffs were injured by negligent activity of a third party on defendant's property. Sections 343 and 343A apply to dangerous conditions known to or discoverable by the possessor of land and to dangerous activities conducted by the owner-occupier, not to dangerous activities conducted by third parties.

The applicable section in the case at bar is section 344. Section 344 provides:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts §344 (1965).

The comments to section 344 contain the following explanation:

"f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts §344, comment f, at 225-26 (1965).

Although the trial court did not apply this standard at the time defendant made its motion, applying instead section 341 (Restatement (Second) of Torts §341 (1965)), the court commented:

"I believe this case can be nothing other than an activity case rather than just a pure premises liability case. *** [B]ut principally it's an activities case with all its burden of contributory

negligence."

Later in the proceedings, conforming to the evidence presented, the court ruled the applicable duty was that stated in section 344 of the Restatement (Second) of Torts.

■ Section 344 has been applied to similar situations in which a party was injured by the activity of a third party. In *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099, this court held section 344 may impose liability for injuries sustained by a spectator struck by a golf ball where the evidence showed that golf balls had regularly landed in the concession area in the park. See *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 225 N.E.2d 83.

Section 344 specifically applies to business invitees or visitors. In this case defendant allowed plaintiffs as well as many other business visitors to enter upon its premises, after a fee was paid for the privilege, to camp on the business property two days prior to the anticipated authorized motorcycle races.

Defendant knew for the three years prior to the accident in question of the unauthorized drag races on its property. It not only knew of the criminal activities (Ill. Rev. Stat. 1985, ch. 95½, par. 11—504 (defining and prohibiting drag racing)), but also used them to its advantage. Defendant opened its facilities two days prior to *any* sanctioned races and received a fee for parking, camping and admission to the race. Defendant provided security "to watch over" the unsanctioned races and did nothing to prevent the illegal activity. Defendant also knew of prior accidents occurring at the drag races and still failed to exercise any due care in prohibiting such illegal and dangerous activity.

Defendant cites many cases to support his argument that a possessor of land has no duty to protect an invitee from open and obvious dangers. These cases are not applicable because they deal with dangerous conditions and not activities of third parties. Although defendant does find support in a Georgia Appellate Court case of *Tatum v. Clemones* (1962), 105 Ga. App. 221, 124 S.E.2d 425, the *Tatum* case lacks precedential value in this court and is distinguishable from the case at bar. In *Tatum,* the court found that the owner of a go-kart race track was not liable for a customer who was injured while in the "pit." The customer first paid general admission to view the go-karts in a protected area but also obtained another pass not generally available to all spectators as part of the general admission to view the races from the "pit," an unprotected area. The Georgia court found that a spectator who enters the pit area knows the obvious dangers of being close to go-karts traveling at approximately 100 miles per hour

without the protection afforded the spectators in the general admission area.

In this case, defendant did not limit which spectators could closely view the drag races. Defendant just "turned its head" as the dangerous activity was commenced while accepting a fee for the opportunity to carry on this illegal activity. We find that section 344 was the proper section to apply and, when applied, this court finds that defendant did owe a duty to plaintiffs.

In light of these findings, this court also finds that plaintiffs' instruction No. 16 was properly submitted to the jury. Jury instruction No. 16, which restated section 344, contained the proper duty in light of the evidence submitted at trial. Furthermore, the evidence at trial more than adequately revealed that defendant had notice of the negligent acts being performed by third parties on its premises. The evidence at trial revealed that defendant had held the sanctioned motorcycle races for three years prior to 1980, that defendant increased security because of the unsanctioned races, and that defendant had knowledge of prior accidents happening at the unauthorized drag races.

## II

Defendant's second issue on appeal is whether the verdict should be set aside because it was "excessive, contrary to the manifest weight of the evidence, shocking to the conscience and clearly the result of passion and prejudice." (See *Jones v. Karraker* (1983), 98 Ill. 2d 487, 457 N.E.2d 23.) It is well established that a reviewing court will give great weight to the determination of a jury on the issue of damages and on review may examine the damage award and order a remittitur or new trial. (*Ball v. Continental Southern Lines, Inc.* (1977), 45 Ill. App. 3d 827, 830-31, 360 N.E.2d 81, 84.) Each verdict for a personal injury must be examined in the light of the particular injury involved, with deference to the discretion of the jury and to the ruling of the trial judge on the post-trial motion. *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453, 158 N.E.2d 63, 69.

### EVIDENCE PRESENTED BY PLAINTIFF DEERHAKE

Linda Deerhake had been married to the decedent, Kevin Deerhake, for two weeks at the time of the accident. The decedent was unemployed at the time of his death because he had been laid off from Better-Built, Inc., where he was working as a carpenter. Decedent had a high school diploma and was a member of a trade union.

The bookkeeper for Better-Built stated that decedent was hired on

October 12, 1979, and terminated on December 13, 1979, but was re-called to work from May 5 until May 29, 1980, at which time he was laid off. Decedent's last hourly wage was $3.90.

██ █ Although Linda and Kevin were not married for long, there is a presumption of substantial pecuniary damages from the relationship alone. It does not matter whether she received pecuniary assistance from the deceased in the past. (*Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036, 1052, 510 N.E.2d 1208, 1218.) In cases of relationship based on marriage, the substantial pecuniary damages consist of companionship, society and conjugal relationship and are the benefits of pecuniary value that the decedent might have expected to contribute to Linda. In this case, the jury heard testimony that Linda and decedent were married two weeks, they were rebuilding a mobile home for their marital residence, decedent was a high school graduate, a union carpenter and possessed mechanical skills. If decedent had not been killed, at the time of trial he would have been the third most senior employee at Better-Built. The $1.1 million verdict does not appear to be a result of passion and prejudice "but rather well within the reasonable range for such a great and permanent loss." Furthermore, defendant did not rebut the presumption of substantial damages. Illinois Pattern Jury Instructions, Civil, No. 31.04 (2d ed. 1971).

### EVIDENCE PRESENTED BY PLAINTIFF DeGERLIA

Plaintiff DeGerlia accurately summarized the findings as follows: As a result of the accident, DeGerlia suffered a serious brain injury resulting in missing brain tissue and general shrinking of brain substance causing memory difficulties, forgetfulness and diminished intellectual capacity.

His dominant left hand received a severely comminuted (pulverized) fracture requiring two operations and ultimately the fusing of the wrist. DeGerlia's wrist is now essentially a stiff wrist with loss of dexterity and agility. DeGerlia also sustained a comminuted compound fracture to his left tibia resulting in a weak union because pieces of bone were missing, requiring a skin and bone graft. A permanent IM rod was inserted in his left fractured femur. From a fractured vertebra in his neck and thoracic spine, DeGerlia lost 50% rotation and tilting of his neck. He also lost 40% of motion in his left ankle. His face received multiple facial fractures and injury to the mandibular condyles resulting in loss of 50% of the ability of his jaw to open. He also suffered extensive damage to his teeth. The vocational specialists for both parties stated that DeGerlia could not return to his previous employment.

■ It is very difficult to fix a pecuniary value on human life, and that amount must depend to quite an extent on the good judgment of the jury under proper instructions from the court. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1050, 460 N.E.2d 464, 470.) Furthermore, the assessment of damages is left to the "sound, deliberate, fair or intelligent judgment, or common or good sense, of the jury; and the jury may allow such damages as they deem reasonable in accordance with their common knowledge, experience and good sense." (*Tonarelli v. Gibbons*, 121 Ill. App. 3d at 1050; Ill. Rev. Stat. 1985, ch. 70, par. 2.) In this case, this court finds that the jury properly awarded to Deerhake $1,100,000 reduced by 30% to $770,000 due to contributory negligence.

■ Although DeGerlia sustained considerable extensive and permanent injury to his body, defendant insists that the award was excessive. Defendant points to the fact that DeGerlia was unemployed at the time of the accident but defendant fails to note that DeGerlia was scheduled to return to work the next day. Defendant does correctly state that plaintiff stayed in the hospital 5½ weeks to recover and had several operations to repair his leg and wrist. However, defendant does not find a great deal of support for the award from the hospital stay and operation justifying the award. This court finds to the contrary. Considering that DeGerlia had to undergo such extensive recovering and has many permanent injuries, the hospital stay and operation more than adequately support the jury award. Since such damages are not subject to mathematical computation but must be evaluated in the context of the particular injuries in the case (*Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 335, 481 N.E.2d 957, 961), this court finds that the award was not excessive.

In summary, this court finds the awards for both plaintiffs were not excessive.

### III

Defendant also raises the issue of whether the trial court's comments in open court had a prejudicial impact on the jury which resulted in the allegedly excessive awards. Defendant refers to the court's involvement in the cross-examination of Gus Jabr, the former secretary and assistant treasurer of the DuQuoin State Fair Association. Defendant argues that the trial court expressed its opinion regarding the credibility of the witness and the witness' involvement in attempting to hide the truth.

■ The alleged interference by the trial court involves whether Jabr had fully disclosed names of persons who had knowledge of the

allegations in the complaint. Defendant contends that the trial court became an advocate of plaintiffs.

Initially, this court must address why Jabr was being impeached. Plaintiff DeGerlia filed, on May 21, 1984, a request for production and interrogatories. Interrogatory No. 1 sought the names of pre- or post-occurrence witnesses. Not for 2½ years and several motions to compel later, including a pretrial conference resulting in an order to compel, did defendant finally answer the interrogatory. However, Jabr's name was not included in those persons with knowledge of relevant facts. The only person listed as having knowledge of drag racing was Gerald Lively, who had suffered a brain aneurysm and had no memory of the accident. On the other hand, Jabr personally signed the interrogatories under oath but plaintiffs did not have any reason to depose him prior to trial. Accordingly, the court properly allowed plaintiffs broad discretion in their examination.

Nonetheless, defendant argues that the court became an advocate for plaintiffs. The record reveals that *outside* the presence of the jury, the court expressed concern that the answers to the interrogatories were "seriously lacking." The court stated:

"I don't know if there is lying or anything so rash as that going on or deliberately trying to hide facts. But the subject of drag racing is certainly something and other things that the man has touched upon certainly pertain to the events alleged in this Complaint. His name is not listed. His brother-in-law's name is not listed [and] apparently some other people's names aren't listed. So I don't know if the defect goes to the extent of pleadings should be stricken and so on, but at least it is the Court's feeling at this time, however the ruling comes out, that there is a serious deficiency in the answering of this interrogatory. Now, what to do about it is the next question. I believe it would be proper to continue with the questioning of this witness before the jury and get him and the jury out of the way and then we will go on from there. If things come out before the jury, after all we are here to try the case and get these facts to the jury with some degree of rapidity and we will just instruct the jury as to what they should or should not listen to. But I think we should go on at this time and take the motion under advisement."

When questioning resumed before the jury, the court ordered the witness to give a direct answer several times because the witness had not answered a question. At no time in the cross-examination of the witness with the jury present did the court act as an advocate for

plaintiffs. Outside the presence of the jury, the court properly and very correctly appraised the situation. The court acted well within its discretion to maintain order and integrity in its courtroom in view of defendant's deliberate attempts to frustrate the judicial process. In light of defendant's discovery misrepresentations and the evasiveness of witness Jabr, the trial court acted with commendable restraint and wisely allowed plaintiffs' counsel wide latitude in examination. This court finds that defendant's allegations are seriously without merit.

In addition, this court finds that impeachment was proper because Jabr (1) signed the interrogatories under oath, (2) refused to give a direct answer, and (3) had more than apparent knowledge of the drag races even in light of his deliberately evasive answers. Thus, this court finds that defendant's later subissue that the trial court erred in permitting the impeachment of Jabr is without merit.

## IV

Defendant also raises numerous allegations of error as its last issue. Defendant specifically argues that the cumulation of these errors made it impossible for the jury to return a verdict consistent with the evidence and free from prejudice. This court finds otherwise.

## A

■■■ Defendant argues that the court improperly allowed evidence of alcohol being sold on the premises. However, defendant was the first to raise the issue of alcohol, and raised it not only once, but three times. Defendant elicited such evidence during cross-examination of witness Davenport. Defendant cannot now complain of such evidence. Moreover, since defendant first raised the issue, the court properly gave plaintiff an opportunity to address it. *Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 410 N.E.2d 149.

In this case the court prohibited defendant from introducing evidence that plaintiffs had been drinking because there was no evidence that they were intoxicated. On the other hand, the court permitted evidence that alcohol was sold on the premises, as that evidence was directly related to the effects alcohol had on the demeanor of the crowd and the ability of security to control the crowd in an orderly manner. In turn, that evidence directly addressed the issue whether there was sufficient security to control the crowd. The evidence was not used to show intoxication of a particular person as a proximate cause of the accident.

Defendant cites *Wagner v. Zboncak* (1982), 111 Ill. App. 3d 268, 443 N.E.2d 1085; however, the case is distinguishable. In *Wagner*, the

defendant attempted to introduce evidence that plaintiff was intoxicated and as such was the proximate cause of the accident. In this case, defendant initially opened the door to the introduction of such evidence. Plaintiff, however, only introduced evidence that alcohol was sold but not of the intoxication of any particular person. In summary, this court finds that the trial court acted properly.

## B

■■ Defendant argues that the trial court erred when it prohibited defendant from inquiring about DeGerlia's prior conviction in 1979 for unlawful sale of a controlled substance. A prior conviction may be admitted into evidence for the purpose of impeaching a witness. (Ill. Rev. Stat. 1981, ch. 110, par. 8—101; *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 590-91, 363 N.E.2d 805, 808.) On the other hand, evidence of a prior felony conviction, even if otherwise admissible, is not admissible if the trial court determines that its probative value is substantially outweighed by the danger of prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 517, 268 N.E.2d 695, 699.) This decision is within the discretion of the trial court and will not be reversed on appeal absent abuse. *People v. McCoy* (1987), 156 Ill. App. 3d 194, 199, 509 N.E.2d 567, 570.

■■ In this case, the court examined the evidence in light of the issue of liability but found that DeGerlia does not remember the accident. Therefore, the attack on credibility would only be directed at DeGerlia's memory prior to the accident and as such that evidence would not be relevant or proper for impeachment. The court added that in this case involving motorcycles, the conviction would only further prejudice DeGerlia in a case where he "has an uphill" battle to begin with. This court finds the trial court did not abuse its discretion.

## C

■■ Defendant argues that the trial court erred when it allowed the jury to consider testimony regarding the behavior of the crowd watching the drag races. Defendant refers to the following answer:

"Everybody seemed to be excited at the drag races. They were a fairly calm crowd. They were cheering people on down at the starting line and farther down the line people were watching. They seemed excited at watching races."

Defendant contends that it was offered for the "purpose of painting a picture that the crowd at the time of the accident was riotous and out of control." In view of the testimony and its context, this court does not find the testimony prejudicial.

## D

■■ Defendant argues that the trial court erred when it allowed the jury to consider testimony from another witness concerning the view DeGerlia may have had immediately before the accident because the witness lacked personal knowledge. In reading the relevant testimony, this court finds that the witness could in fact see the accident. He was 30 to 40 yards from the accident and 20 yards from the curb. He saw that the crowd was lined up along the curb on both sides of the road. Without objection, he stated that the decedent was about two feet from the crowd. The crowd angled in toward the center of the road where the drag racing occurred. Later, counsel attempted to ask the witness what view DeGerlia had. After several objections, counsel asked:

"Q. [Phillip Kardis, attorney for DeGerlia]: I guess the first question is, from where you were standing, looking, could you, the guy that is on the bike that comes off the curb. Could you tell what his view was looking to the left? ***

A. Okay. It looked like he wouldn't have a real good view until after he got off the curb, because there was people in the way kind of."

In light of the witness' vantage point in the crowd, the question was proper to establish personal knowledge. Thus, the trial court did not err.

## E

Defendant argues that the trial court erred when it allowed DeGerlia to testify that he uses a transubcutaneous nerve stimulator for pain because a proper foundation had not been laid to establish if a doctor had prescribed the stimulator. Defendant also argues that plaintiffs laid no foundation connecting use of it to the injuries from the accident.

■■ The trial court permitted the testimony regarding the stimulator just as it could have allowed testimony regarding aspirin use for pain. The court limited the testimony to that area alone since it is customary for plaintiffs in injury cases to testify regarding injuries they claim they received. *Jensen v. Richardson* (1968), 93 Ill. App. 2d 237, 240-41, 235 N.E.2d 397, 399.

At trial, evidence was adduced that DeGerlia had extensive injuries to his left leg. DeGerlia suffered a comminuted compound fracture to the tibia resulting in a weak union because pieces of bone were missing. DeGerlia had a skin and bone graft done to the area. He also sustained a fractured femur which had been repaired with a permanent

IM rod. Defendant's expert Dr. Hornstein saw the stimulator during examination and diagnosed the leg as having "extensive deformity and atrophy of the left lower extremity involving scarring about the thigh, calf and foot."

During DeGerlia's brief testimony regarding the stimulator, he stated that he uses it for pain relief. DeGerlia did not state how it works or who prescribed the stimulator. In light of the brief and limited testimony and the extensive injuries to the leg, the court did not err in allowing evidence for the limited purpose to show use of the stimulator for relief of pain.

## F

Defendant argues that the trial court erred when it allowed William Johnson to testify as an expert for plaintiffs because he was testifying to matters within common knowledge of the jurors. "Expert opinions thus may not be admitted on matters of common knowledge unless the subject is difficult of comprehension and explanation." (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99, 382 N.E.2d 1201, 1205.) Defendant cites *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, in which the court held that an expert is not permitted to testify that a location of a picnic area could expose the area to traffic along a nearby street and rails, and that barriers or blocks along or in front of the picnic area would have the effect of slowing, stopping or deflecting a vehicle coming onto the premises from that direction.

In the case at bar, this court finds that although the expert would utilize common facts to state what precautions could have been taken by defendant, he would use those facts to address a complex matter, the management of thousands of people and a potentially dangerous situation, including the risk of a riot. The management of such large groups of people is not within the common knowledge of all persons. Different situations require different tactics to quell a riotous situation. Whereas *Ray* involved a simple situation in which a jury could have used its own knowledge to assess what would have stopped a vehicle from entering a picnic area, in this case such a simple evaluation was not possible, and an expert was essential to aid the trier of fact. This court finds that the trial court did not err.

## G

Defendant argues that the court erred when it allowed plaintiffs to question Lyndal Graff about the reason for holding a rock concert on the Saturday before the sanctioned races. The court permitted

plaintiff to read to the jury from Graff's evidence deposition, which stated:

> "Q. Well, wouldn't that indicate to you that the DuQuoin State Fair Association was taking steps to increase the crowd on the day before the authorized race, rather than decreasing it?
>
> A. That's correct. I did not—was not involved in that decision to bring in a rock concert.
>
> Q. Would the rock concert have been expected to increase the crowd at the fairgrounds on the night before the sanctioned race?
>
> A. I think what the thought was to provide entertainment in another form for the spectators on the grounds."

After reviewing the contest of the questions and answers, this court finds that the trial court did not err. The answers were not highly prejudicial but rather went to the circumstances surrounding the drag race, the three-day camping event, and the rock concert, as well as defendant's invitation for those spectators to camp on the grounds before the sanctioned races. The questions were directed at defendant's knowledge that approximately 10,000 persons were invited to the grounds to camp.

## H

■■■ Defendant argues that the trial court erred when it allowed the jury to consider the case history of DeGerlia taken by Dr. Samuel Bernstein, a vocational rehabilitation specialist. Defendant states that *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, reaffirms *Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 182 N.E.2d 211, which held that statements to a nontreating physician who was consulted solely for purposes of rendering an opinion at trial are not within the hearsay exception regarding subjective statements made to a physician for purposes of treatment.

This court notes, however, that defendant does not complete its analysis. The *Melecosky* court in effect abrogated the *Jensen* rule in its use of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, which held a physician may rely upon hospital records in forming an opinion even when the records are not admitted into evidence. *Wilson* did not make a distinction between treating and nontreating experts. It further adopted the rationale of Federal Rules of Evidence 703, which allows expert witnesses to base an opinion on inadmissible facts and data, and 705. The *Melecosky* court then held it was proper for the nontreating expert to testify even though the doctor based his opinion on the plaintiff's subjective statements.

In light of defendant's misinterpretation of the relevant case law, this court finds that Dr. Bernstein's testimony was admissible hearsay. Dr. Bernstein diagnosed DeGerlia's vocational rehabilitation potential after a series of tests and after hearing DeGerlia's subjective statements and work history. Afterward, when Dr. Bernstein recommended therapeutic help for DeGerlia's depression, he became a treating physician and not merely a consulting physician evaluating DeGerlia for trial purposes, as defendant contends. Defendant does point out that Dr. Bernstein did not attempt to rehabilitate DeGerlia but fails to note that he found DeGerlia to be unemployable, and accordingly, further rehabilitation was not indicated. Since Dr. Bernstein was a treating vocational rehabilitation specialist, his testimony can be based on hearsay evidence. (*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 117, 483 N.E.2d 273, 278.) Thus, the trial court did not err.

## I

■■■ Defendant argues that the trial court erred when it admitted DeGerlia's medical bills into evidence because DeGerlia failed to lay a proper foundation. Regarding the bill of $901 for physical therapy, DeGerlia admits that no foundation was laid for its admission and the trial court had stated that there was no foundation. Plaintiff also agrees that there is sufficient foundation "except to the extent that the court feels that the physical therapy bill would be unjustly prejudicial to the defendant." In view of the record, this court finds the evidence prejudicial and agrees with DeGerlia's suggestion to grant a remittitur in the amount of $901.

Regarding the bill for services rendered by Dr. Jacques Schaerer, defendant contends that Dr. Schaerer was employed solely for litigation. However, defendant fails to state that Dr. Schaerer also treated DeGerlia when he prescribed an anti-arthritic/anti-inflammatory medication. Thus, defendant's argument is without merit.

■■ Defendant also asserts that DeGerlia is not entitled to recover for the value of services that he has obtained without expense, obligation or liability. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 362, 392 N.E.2d 1, 5.) In *Peterson*, the court held that since the plaintiff received free medical services from the hospital, the value of those services was not admissible. In this case, however, DeGerlia did not receive any free medical services. His insurance company paid a majority of the bills—$23,026.31. His mother paid $9,046.92, for which DeGerlia reimbursed her. In light of these findings, this court finds defendant's argument without merit. In sum-

mary, this court finds that the trial court did not err in admitting the evidence of the medical bills but does grant a remittitur in the amount of $901.

## J

■■■ Defendant argues that the trial court erred when it instructed the jury on plaintiffs' instruction No. 14, which stated:

> "When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

The instruction is Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) (IPI Civil 2d No. 15.01) in its entirety. The comment to IPI Civil 2d No. 15.01 states that the last two sentences of IPI Civil 2d No. 15.01 should be used only where there is evidence that something or someone other than defendant was the proximate cause of the injury.

In this case, decedent Deerhake's conduct was a contributing or concurring cause to DeGerlia's injury. Moreover, defendant's liability under section 344 involves evidence of negligence of a third party. Evidence was presented which made it necessary and proper to instruct the jury on IPI Civil 2d No. 15.01. Defendant's argument is without merit.

## K

■■■ Defendant argues that the trial court erred when it instructed the jury on plaintiff's instruction No. 18(b), which listed the various allegations of negligence. Defendant argues that it did not have a duty to protect these plaintiffs from injuries associated with unauthorized drag racing. However, defendant's duty was addressed in issue I and need not be discussed further. This court finds defendant's argument without merit.

For the foregoing reasons, this court affirms the verdict of the jury and the judgment of the circuit court of Perry County, but orders a remittitur in the amount of $901.

Affirmed with directions.

LEWIS and RARICK, JJ., concur.