(No. 57598.—)

TERRI L. JONES, Adm'r, Appellee, v. RICHARD W. KARRAKER, Appellant.

*Opinion filed October 21, 1983.—Rehearing denied December 2, 1983.*

488

SIMON, J., RYAN, C.J., and UNDERWOOD, J., dissenting.

James E. Whitmire, Jr., of McGehee, Boling & Whitmire, Ltd., of Silvis, and Isador I. Katz, Stuart R. Lefstein, and Robert T. Park, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellant.

Stephen S. Buckley, of Santa Ana, California, and Michael J. Warner, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellee.

George M. Elsener, Robert J. Glenn, and Robert J. Drummond, all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Richard W. Karraker, a physician, appealed from the judgment entered in the circuit court of

Rock Island County upon a jury verdict returned in favor of plaintiff, Terri L. Jones, administrator of the estate of Brandy Lee Jones. The appellate court affirmed (109 Ill. App. 3d 363), and we allowed defendant's petition for leave to appeal (87 Ill. 2d R. 315).

The complaint alleged that Brandy Lee Jones, a viable fetus, died *en ventre sa mere* as the result of defendant's negligence. The facts are adequately set forth in the appellate court opinion and will be stated here only to the extent necessary to discuss the issues.

Defendant contends that the verdict and judgment in the amount of $125,000 are excessive. He argues that the appellate court erred in affirming the judgment because "no Illinois case has ever previously held that the presumption [of some substantial pecuniary loss], by itself and without more, is sufficient to support a substantial verdict ***." Defendant argues that, prior to this case, every reviewing court which has affirmed an award for a minor's death, in addition to noting the presumption of substantial pecuniary loss, has cited evidence supporting the jury verdict. Defendant asserts that the appellate court erred in concluding that "no evidence whatsoever need be required to support a verdict for substantial pecuniary loss."

There was no evidence offered of the baby's characteristics, and as the appellate court said, "the record shows that the only evidence before the jury on the question of damages was the fact that the fetus was viable and that, absent defendant's malpractice, the evidence indicated that the plaintiff would have had a normal, healthy baby." (109 Ill. App. 3d 363, 370.) Defendant argues that there must be evidence, in addition to the presumption, to sustain a verdict for the benefit of the lineal next of kin. We do not agree. In *City of Chicago v. Major* (1857), 18 Ill. 349, the jury awarded damages for the death of a four-year-old boy. Concerning

the assessment of damages the jurors were instructed that they "must found their estimate upon such facts in proof as tend to show the pecuniary extent of the loss sustained; but to enable the jury to arrive at such an estimate, it is not necessary that any witness should have expressed an opinion as to the amount of such pecuniary loss, but the jury may themselves make such an estimate from the facts proved, taking into consideration the age of the deceased, and such other evidence as may afford them the means of making the estimate." (18 Ill. 349, 354.) The only evidence was the age of the child and his relationship to the plaintiff. A judgment awarding damages for the death of the child was affirmed.

In *City of Chicago v. Scholten* (1874), 75 Ill. 468, in rejecting an attack on an instruction, the court said:

"One reason suggested why this instruction should have been refused is, that it is not based on any evidence in the case. This is a misapprehension of the facts. Where there is any evidence, however slight, it is sufficient to sustain an instruction upon the hypothetical case it tends to prove. As much evidence is contained in this record as was given in *The City of Chicago v. Major*, 18 Ill. 349, where a verdict for $800 was sustained, for causing the death of a child four years old. The child was too young to have rendered any services to its parents, or next of kin, and all that was proven was the age and relationship. It was said, the jury was authorized to estimate the pecuniary damages, from the facts proven, in connection with their own knowledge and experience. The doctrine of this case has been adhered to in all subsequent cases arising under this statute. *C. & R. I. R.R. Co. v. Morris*, 26 Ill. 400; *C. & A. R.R. Co. v. Shannon*, 43 ib. 346.

In the case at bar, proof was made of the age of the deceased, the names of the next of kin, and that his parents were laboring people.

These facts alone were sufficient on which to base an instruction, embodying the principle contained in this one. It was not indispensable there should be proof of actual services of pecuniary value rendered to the next of

kin, nor that any witness should express an opinion as to the value of such services, before a recovery could be had." 75 Ill. 468, 471.

It is true that in many opinions involving verdicts for the wrongful death of minor children the evidence of the child's health, abilities, disposition and other accomplishments has been discussed, but in none of these opinions was it held that such evidence is required to sustain a verdict.

That the presumption is not conclusive, and the propriety of entrusting to a jury the task of assessing damages in the light of the presumption and "in connection with their own knowledge and experience" are demonstrated in *Flynn v. Vancil* (1968), 41 Ill. 2d 236. In *Flynn* a jury returned a verdict finding liability but "no damages" for the death of a two-week-old child suffering from an incurable congenital physical defect. "Knowledge and experience" teach us that the evidence which defendant contends was essential is of questionable value in assessing damages for the death of a baby.

Defendant contends that the question of damages where the only evidence presented was that the fetus, but for defendant's negligence, would have been healthy was a question of law. Defendant argues that trial lawyers and litigants will be unable to estimate the value of a particular case for purposes of settlement, and the failure of this court to establish a specific dollar amount for damages in this type of case will diminish reasonable settlement possibilities and encourage litigation. Defendant suggests that this court should hold that a verdict for the death of a viable fetus may not exceed $20,000.

It is, perhaps, true that this question could be treated as one of law. Indeed, in the past the General Assembly has limited the amount of damages in wrongful death cases (see *Hall v. Gillins* (1958), 13 Ill. 2d 26, 29-30, citing Ill. Rev. Stat. 1957, ch. 70, pars. 1, 2), but has removed any such limitation. In *Flynn v. Vancil* this court, in effect, re-

jected the contention that there be a minimum verdict. In our opinion placing a limit on the maximum or minimum amount of an award in a case such as this is a legislative prerogative. We decline to do so.

Finally, defendant asks this court to either award a new trial or enter a remittitur in the amount of $105,000 or another appropriate amount. The amount of a jury's verdict will not be disturbed unless it is so large as to indicate passion or prejudice. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 437.) We find apposite here the concluding comments of the opinion in *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442:

> "We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice.
>
> We therefore conclude that the verdict and judgment below are correct and the judgment is affirmed." 16 Ill. 2d 442, 453.

Defendant contends next that the circuit court improperly excluded the evidence deposition of Dr. Norman Powell. When Dr. Powell's evidence deposition was taken prior to trial, counsel for plaintiff made continuing objections on the basis that Dr. Powell, in stating his conclusions, relied upon medical records not admitted into evidence and objected to the medical records on the ground that they were offered without sufficient foundation and were hearsay statements not in evidence.

At trial, when Dr. Powell's evidence deposition was offered in evidence, plaintiff's counsel, citing *Wilson v. Clark* (1981), 84 Ill. 2d 186, argued that it was inadmissible on the ground that the expert witness based his opinion on records not in evidence. The following colloquy occurred:

"MR. WARNER [plaintiff's counsel]: Your Honor, I do think it may be time consuming; but I think it is possible for Mr. Katz to produce the necessary people to get these documents admitted in the record.

THE COURT: If they are then admitted in the record, the deposition could be retendered to the court.

MR. KATZ [defense counsel]: That isn't what they are arguing, Judge.

MR. WARNER: That isn't correct. The person who is eliciting his opinion is basing the opinion upon records, which is improper. It has to be done based upon an assumed set of facts, not any records in any way, unless he is the treating physician."

After the trial court reviewed the case of *Wilson v. Clark*, it concluded that the evidence deposition could not be "admitted at this time." The court further concluded that the question posed by defense counsel in the evidence deposition was based on more than mere hypothetical facts, and said: "It appears, unless there is something that I have missed, that everything thereafter was based upon a presumption of having relied on those records and that they would be offered in evidence." Defense counsel asked plaintiff's counsel to stipulate that the records could be admitted, and plaintiff's counsel refused. Defense counsel did not seek to introduce the medical records into evidence and did not again offer Dr. Powell's evidence deposition.

Defendant first contends that Dr. Powell's deposition contained "a proper hypothetical question" and thus was admissible. At the end of a four-page-long hypothetical question, defense counsel asked:

"Bearing these facts in mind, and based upon your training, experience and knowledge, out of your experience, bearing in mind the records of the hospital and the doctor's obstetrical records, and assuming these facts to be established in this case, do you have an opinion, Doctor, based upon a reasonable degree of medical expertise, *whether the activities of the obstetrician in the hypothetically indicated case* with this patient was a departure or a deviation from the reasonably accepted standards of a

> reasonably well-qualified obstetrician in Moline in 1978 with reference to the treatment of a patient?"

Defendant argues that the emphasized words served to transform the question, which referred to the facts contained in records but not stated in the question, into a "hypothetical question" which was not subject to the requirement that medical records be admitted into evidence before an expert give his opinion based on those records. We do not agree. By definition, a "hypothetical" question contains the facts which are assumed to be true. Black's Law Dictionary 669 (5th ed. 1979).

Defendant next suggests that the objection made at the evidence deposition was not sufficiently precise to satisfy Supreme Court Rule 211(c) (87 Ill. 2d R. 211(c)). We disagree. The transcript of the evidence deposition shows that defense counsel was well aware that in order to cure the defect which was the basis of plaintiff's objection he would be required to introduce the medical records relied on in his "hypothetical" question.

Defendant next argues that it was inherently unfair for the trial court to exclude Dr. Powell's evidence deposition when plaintiff's experts were permitted to base their opinions on records not admitted in evidence. Plaintiff disagrees with the assertion that its experts relied on records not admitted in evidence. Whether plaintiff's experts relied on records not admitted into evidence to form their opinions is irrelevant, however, because, as the appellate court noted, defense counsel did not object to the opinions rendered by plaintiff's expert on this basis.

Defendant next complains that plaintiff's counsel did not apprise defense counsel concerning the prospective adoption in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193-96, of Rules 703 and 705 of the Federal Rules of Evidence. *Wilson v. Clark* specifically stated that the holding in that case "shall apply only to cases in which the initial complaints are filed on and after the date of this opinion, or in which trial commences on or after September 1, 1981." (84

Ill. 2d 186, 196.) Defendant contends that it was incumbent upon plaintiff's counsel to apprise him of the effective date of the holding in *Wilson v. Clark*. Defendant notes that the appellate court had previously rendered its decision in *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, which specifically sanctioned the use of medical opinions based on medical records not in evidence, and that an attorney could have been confused as to which rule was in effect at the time of the deposition. We disagree. As the appellate court noted, plaintiff's counsel was not required to furnish copies of the cases upon which he relied. We are also of the opinion that plaintiff's counsel was not required to explain to defense counsel the "time frames" contained in *Wilson v. Clark*.

Finally, defendant contends that it was error to grant plaintiff's motion *in limine*. Plaintiff moved that the court prohibit defendant from eliciting any testimony concerning, or making any reference to, the name of the child's putative father, or the marital status of plaintiff during her pregnancy. We agree with the appellate court on this issue. We note parenthetically that on this record it is difficult to conclude that the jury was not made aware that plaintiff's child, had it survived, would have been illegitimate.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

I do not dispute the proposition, by now well established, that in wrongful death cases there is a presumption of substantial pecuniary loss to the next of kin (*e.g., Flynn v. Vancil* (1968), 41 Ill. 2d 236, 238; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 78; *Hall v. Gillins* (1958), 13 Ill. 2d 26, 31; *City of Chicago v. Major* (1857), 18 Ill. 349, 360; *Yamada v. Hilton Hotel Corp.* (1977), 60 Ill. App. 3d 101, 112). What I disagree with is the majority's apparent conclusion that this presumption gives juries *carte blanche* in

awarding damages for the death of very young or unborn children. I believe that an award of $125,000 for a fetus, none of whose essential characteristics were placed in evidence, is far beyond what the knowledge and experience of rational people would indicate a child's pecuniary value to its parents to be; thus, I would either remand the case for recomputation of an award or enter a remittitur pursuant to the supervisory authority of this court.

The presumption of substantial pecuniary loss is a judicial response to an unavoidable mechanical problem endemic to the wrongful death cause of action—the difficulty of establishing that damages exist. The only damages that were traditionally recoverable under the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, par. 1 *et seq.*) were those for the income and services which the deceased would have generated had he lived. Estimating these damages could perhaps be done by considering the health of the deceased, his anticipated future lifespan, the jobs he held, his education or vocational training, economic forecasts, or various other factors that might have a bearing on his earnings and the type and pecuniary value of the services he might have rendered. (See *Wilcox v. Bierd* (1928), 330 Ill. 571, 580-81, *overruled on other grounds by McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 494.) Yet the precise amount of these damages would, in the vast majority of cases, be uncertain, and the trier of fact could do no more than speculate as to the proper amount no matter how much evidence was at its disposal. See C. McCormick, Damages sec. 101, at 353 (West 1935).

Common sense tells us that, in spite of the speculation that is required to reach such a conclusion, many who die prematurely do possess a significant earning power or capacity to render services to their next of kin at the time of their death. Accordingly, the presumption relied on by the majority shifts to the defendant the burden of coming forward with evidence that the damages are minimal or do

not exist. Such evidence might rebut the presumption. (See *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 239-41.) However, the presumption is not evidence in itself but is merely a limited substitute for evidence, a shifting of the burden of proof as to the existence of damages. If unrebutted, the effect of the presumption is at most to insure that damages will be awarded in more than a nominal amount. In assessing the precise amount the trier of fact must be guided by its " '*** own observation and experience in the affairs of life' " (Illinois Pattern Jury Instruction, Civil, No. 1.04 (2d ed. 1971), as quoted in *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 473; see *City of Chicago v. Scholten* (1874), 75 Ill. 468, 471-72; *City of Chicago v. Major* (1857), 18 Ill. 349, 360).

Implicit in this is that, presumption or no presumption, the amount of the award may not be influenced by passion or prejudice but must be within the bounds of ordinary knowledge or experience. To keep it within those bounds, this court has an "obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice" (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453) and must, as a necessary corollary, either remand the cause or substitute its own judgment for that of the jury if the record reveals no basis for the verdict it reached.

The majority pays lip service to the review which this court is required to undertake and also mentions in *dictum* that in the absence of evidence as to the amount of damages, the question of damages "perhaps *** could be treated as one of law" (98 Ill. 2d at 491) rather than as one of fact entrusted to the jury. However, it neither undertakes any review of the evidence nor engages in any debate as to whether $125,000 is an unreasonable estimate of pecuniary loss under the circumstances of this case, but merely declines to set an upper or lower limit on an award and states:

" 'We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do ot believe that it is so excessive as to show passion or prejudice.

\*\*\*' " 98 Ill. 2d at 492, quoting *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453.

I find it difficult to see how this court can "conclude" anything "from the evidence" when there is no evidence, and I believe it is self-contradictory to treat an issue as one of law, but defer to the jury's finding concerning it as if there were an issue of fact that had to be resolved. In this case the only evidence relevant to damages that emerged at trial was the defendant's own testimony that had he performed a timely caesarean section the plaintiff would have had a normal, healthy baby (109 Ill. App. 3d 363, 366-67), and information contained in a doctor's report that the mother was 19 years old at the death of the fetus, had an 11th-grade education and a history of diabetes in her family, was 4 feet 9 inches tall, suffered from obesity, was unmarried and lived with her parents during the pregnancy. Apart from that, the record on which the jury was to base its verdict tells us nothing about the baby's father or his earning prospects and fails to disclose even the sex of the fetus.

Under the circumstances presented in this case, I believe that $125,000 is an unreasonably large amount to award for the wrongful death of a baby none of whose characteristics other than viability are in evidence. Common sense indicates that because children do not ordinarily hold paying jobs until they are teenagers it is unlikely that this child would be able to make any monetary contribution to the family for at least 10 or 15 years. Similarly, children tend to be net consumers rather than donors of goods and

personal services until they reach their teens, and the expense of rearing them in the meantime is usually quite substantial. Realistically, the flow of benefits is not likely to reverse direction until the child is well into adolescence. It would be sheer speculation to conclude otherwise on the record in this case. Yet the award that is made for a wrongful death should take account of these factors. (See *Rockford, Rock Island & St. Louis R.R. Co. v. Delaney* (1876), 82 Ill. 198, 199; C. McCormick, Damages sec. 101, at 352 (West 1935).) Significantly only one of the Illinois cases cited by the parties in this case involved damages comparable to the $125,000 awarded here, in spite of the fact that the plaintiffs in most cases made evidentiary showings relevant to the question of earning capacity. Compare *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463 ($188,000 award for the wrongful death of each of two youths aged 19 and 17 upheld on the basis of detailed evidence concerning their life expectancy, personality, distinguished academic records, anticipated annual earning potential and average interest rates over their projected lifespan) with, *e.g., Flynn v. Vancil* (1968), 41 Ill. 2d 236 (no damages awarded because the deceased, a two-week-old child, was shown to have had an incurable congenital condition affecting her health); *Mattyasovszky v. West Towns Bus Co.* (1974), 21 Ill. App. 3d 46, *aff'd* (1975), 61 Ill. 2d 31 ($75,000 award for death of 12-year-old boy upheld on a showing that he had regular employment at the time of his death and in addition did all of the household chores for a family of six, cared for the younger children, and did odd jobs for others which earned money); *Shanowat v. Checker Taxi Co.* (1964), 48 Ill. App. 2d 81 ($10,000 award for death of 11-year-old girl upheld as not excessive); *Maca v. Rock Island-Moline City Lines, Inc.* (1964), 47 Ill. App. 2d 31 ($30,000 award for death of seven-year-old boy upheld on a showing that he was in good health, was industrious and obedient and well behaved).

The plaintiff places great reliance on the *Maca* case, in which $30,000 was awarded in 1964, as evidence that $125,000 is not excessive today in view of the inflation that has occurred since. Inflation, however, is a two-edged sword in the context of the "value" of an unborn child. Just as such a child will earn more dollars for a given job or service in inflationary times than normally, so also will the services which his family renders him require a higher price in terms of dollars as a result of inflation. I again point out that these services are likely to occupy a considerable part of an infant's future, whereas older children generally require less in the way of parental care (C. Mc-Cormick, Damages sec. 101, at 354 (West 1935)) and in some cases, as in the *Mattyasovszky* case which I have cited, they may take care of the family rather than vice versa. In addition, dollars that are earned in the future must be "discounted," or divided by the interest rate over the years intervening between the present and the time of their anticipated accrual as earnings, in order to arrive at the proper amount of an award. (See, *e.g., Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 467.) If inflation and interest rates remain high, as plaintiff appears to suggest they will, this "discounting" will take a heavy toll of the future monetary earnings of an unborn child, which as I have stated are not likely to begin accruing for many years.

Far more troublesome than the question as to whether the award in this case was excessive is the fact that the majority did not decide this difficult question at all but permitted the verdict to stand solely on the basis of the presumption of substantial pecuniary loss. This approach errs in giving the presumption an evidentiary life of its own, as I explained at the outset of this dissent. It also, I fear, fosters distrust of our judicial system. Under the majority's approach it would not matter whether the award urged for review was $125,000 or $1,250,000: the presumption of

substantial loss would sustain it in either case so long as no evidence of the decedent's inability to earn money or unwillingness to contribute money or services to his next of kin is offered to rebut the presumption. What would be the basis for review if reviewing courts are confined to the evidence in the record and the attitude of the courts is that plaintiffs do not need evidence because they have a presumption working in their favor? What would prevent juries from spending defendant's money in a blank check fashion?

Common sense tells us that it is improper to close the eyes of our appellate court to possible abuses of discretion by the trier of fact: that course would leave the parties to a lawsuit to their fate and would most likely encourage abuses of discretion over the long run. The need for review as a safeguard against such abuses is even greater in cases where a presumption is employed as a substitute for evidence than in cases where there is no presumption to use, even though the sparsity of actual evidence in cases involving a presumption is likely to make the inquiry of whether an award is excessive more difficult. One reason for this is that the factfinder may conclude that the presumption has independent evidentiary value which entitles him to ignore or discount real evidence or reach a conclusion which would otherwise be unsupportable. Another reason is that, without a clear indication that factfinders are being restrained by reviewing courts in their use of presumptions as substitutes for evidence, the public will come to believe that they are ignoring evidence and that the numbers they come up with were arbitrarily pulled out of the air.

This perception is one which I believe courts should be concerned about, both as institutions and as guardians of our laws. In *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, the case in which this court held that there was a cause of action for the wrongful death of an unborn child, three justices dissented. (*Chrisafogeorgis v. Brandenberg*

the problem of ascertaining the damages in such cases: the majority decided, unlike at least one other court (*Carroll v. Skloff* (1964), 415 Pa. 47, 49-50, 202 A.2d 9, 11), that this difficulty was not insurmountable and that it therefore should not preclude the creation of the cause of action (*Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, 371-72). The existence and amount of the pecuniary loss that accompanies the death of a fetus is always highly speculative, however, and heavy reliance will be placed on the presumption of substantial loss in most cases to sustain awards. The majority decision in this case regarding the use of the presumption leads me to conclude that the optimism of the majority in *Chrisafogeorgis* was unfounded.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.