LARRY SMITH *et al.*, Indiv. and as Special Adm'rs for the Estate of Christopher Duane Smith, Deceased, Plaintiffs-Appellants, v. MERCY HOSPITAL AND MEDICAL CENTER, Defendant-Appellee.

First District (2nd Division)   No. 1—88—3476

Opinion filed September 18, 1990.

Rivkin, Radler, Dunne & Bayh, of Chicago (Alan E. Case and David M. Zinder, of counsel), for appellants.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Jonathan Regunberg and Kathleen A. Brosnan, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

As a result of injuries sustained *en ventre sa mere*, Christopher Duane Smith (Christopher) was delivered stillborn on June 6, 1983. On June 3, 1985, his parents, plaintiffs Larry and Yolanda Smith, filed a complaint pursuant to the provisions of the Wrongful Death Act (or Act) (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*) against Mercy Hospital and Medical Center (defendant) alleging that its negligent medical care of Yolanda Smith (Yolanda) during the final days of her pregnancy caused Christopher's stillbirth. They appeal from two orders of the circuit court dismissing their claims for the loss of (1) Christopher's services and support and (2) his society.

In count I of their two-count complaint, plaintiffs alleged that Yolanda was in defendant's care from March to June 1983, the final trimester of her pregnancy with Christopher; that defendant hospital, which she entered on June 4, 1983, failed to give her proper informa-

tion about the signs and symptoms of labor; and that instead of advising her to remain at its facilities, it directed her to return home. Yolanda complained of new symptoms to defendant on June 5, 1983, when it again failed (1) to give her proper instructions; (2) to use appropriate procedures; or (3) to conduct tests that could have saved Christopher's life. According to the complaint, these negligent acts and omissions of defendant caused Christopher's stillbirth on June 6, 1983. Plaintiffs claimed damages for the "loss of benefits of pecuniary value, including money, goods and services which Decedent would have contributed to them had he lived and *** a loss of Decedent's society." In count II, they sought recovery for negligent infliction of emotional distress, and although this count was also dismissed with prejudice, it is not part of this appeal.

In moving to dismiss count I, defendant argued that Illinois, as a matter of law, does not permit the recovery of damages for loss of services and society caused by the wrongful death of an unborn child; however, Circuit Judge Willard J. Lassers found that section 2.2 of the Wrongful Death Act not only "unmistakably" created a cause of action for a wrongful death of a fetus but that, contrary to defendant's contention, Illinois recognizes a right to recover damages under the Act for the loss of a stillborn child's society. The judge accordingly denied defendant's motion with respect to plaintiffs' loss of society, but granted the motion relating to their claim for the loss of the child's services.

Several months later, defendant moved to dismiss plaintiffs' claim for the loss of Christopher's society on the basis of *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555, 515 N.E.2d 108, in which the appellate court for the fifth district denied loss of society benefits to the plaintiffs for the wrongful death of their unborn child, drawing the line for the maintenance of such a cause of action at birth. Acknowledging that he was bound by the decision in *Hunt*, Circuit Judge Dean J. Sodaro struck the only remaining portion of the complaint. (See *Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1018, 531 N.E.2d 989, 993.) Plaintiffs appeal from both orders of dismissal.

The issues thus presented for our review are (1) whether plaintiffs, as the parents of a stillborn child, may recover damages in a wrongful death action for the loss of their child's society and whether they are entitled to a presumption of such loss; and (2) whether in the absence of a presumption of pecuniary injury for the loss of the child's services and support, plaintiffs are entitled to prove such loss. We reverse both orders of dismissal and remand the cause for trial.

■ Our scope of review is well defined and well established. At this procedural juncture "all well-pleaded facts in the complaint and all reasonable inferences from them will be regarded as true." (*Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 499, 520 N.E.2d 37.) The reviewing court must further consider the complaint as a whole and "should interpret the facts alleged *** in the light most favorable to the plaintiffs." (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86.) Accordingly, the defendant's motions should not have been granted unless it affirmatively appears that no set of facts could be proved which would have entitled plaintiffs to relief. *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463; *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 463 N.E.2d 913.

We are persuaded that permitting parents to recover for the loss of their stillborn child's society and entitling them to a presumption thereof is a natural and logical outgrowth of existing law in Illinois. Promulgated in 1853, the Illinois Wrongful Death Act has remained virtually unchanged since then. It allows a deceased family member's personal representative to sue on behalf of the spouse or next of kin for "pecuniary injuries" where the victim's death was caused by negligence. (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*) Section 1 of the Act provides:

"§1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." (Ill. Rev. Stat. 1989, ch. 70, par. 1.)

Section 2 of the Act provides in pertinent part as follows:

"[I]n every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." Ill. Rev. Stat. 1989, ch. 70, par. 2.

Since "pecuniary injuries" are not defined in the Act, our courts have evolved their own formulaic definition of the term. In the first of its decisions to construe the Act, *City of Chicago v. Major* (1857), 18

Ill. 349, the supreme court limited "pecuniary injuries" to the economic loss of the deceased's services and support. Because the deceased in *Major* happened to be only four years old, the court also recognized a presumption of pecuniary loss. (See also *City of Chicago v. Scholten* (1874), 75 Ill. 468, 471; *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 516, 468 N.E.2d 1228, 1233.) Historically, then, loss of society and loss of consortium were for a considerable period of time not recoverable elements of damage, an exclusion based on the view that the loss of the companionship of the decedent was not capable of pecuniary valuation. (M. Polelle & B. Ottley, Illinois Tort Law 505 (1985).) In recent decades, however, the trend has been to interpret the term "pecuniary injuries" more expansively, which has led to the inclusion therein of not only purely economic loss, but also loss of society. For example, in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, *cert. denied* (1956), 352 U.S. 833, 1 L. Ed. 2d 53, 77 S. Ct. 49, the court recognized that the loss of a deceased father's "felicity, care, attention, and guidance" were compensable as pecuniary injuries under the Act. In *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352, the court declined to allow a common law action brought by a widow and her minor child for the deprivation of the father's "support, *** companionship, guidance, advice, love and affection," because an adequate remedy already existed under the Act, and unanimously held that the term "pecuniary injuries" was broad enough to include most of the items of damages the plaintiffs had claimed in the case. To the same effect is *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83, 174 N.E.2d 157, 162-63. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163, the court, relying on *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, in which it held that there was no basis in modern society for the denial of a wife's common law action for loss of consortium, and relying also on *Hall*, ruled that loss of a spouse's society is a compensable pecuniary injury under the broad wording of the Act. However, although the parents of a deceased minor child were long entitled to a presumption of the loss of the child's services and earnings, prior to June 1984, Illinois courts refused to allow recovery for the loss of a child's society despite the absence of such a proscription in the Act. See, *e.g.*, *Trotter v. Moore* (1983), 113 Ill. App. 3d 1011, 447 N.E.2d 1340, *rev'd* (1984), 101 Ill. 2d 551, 468 N.E.2d 1236.

Then, in the case of *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 516-17, 468 N.E.2d 1228, 1233, the supreme court removed the presumption of damages arising from the loss of a minor child's services and support, reasoning that "the presumption that parents derive sig-

nificant financial benefits from their children bears little, if any, resemblance to modern family life"; however, since today "the chief value of children to their parents is the intangible benefits they provide in the form of comfort, counsel and society," the court recognized instead a rebuttable presumption of the loss of a minor child's society. (102 Ill. 2d at 516-17, 468 N.E.2d at 1234.) Reaffirming that "the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses," the court rejected defendant's urging "that we await further indication from the General Assembly," explaining that in light of its rulings in *Hall, Elliott* and *Knierim,* "it would be anomalous to now deny parents" recovery in a wrongful death action "for loss of their children's society." (*Bullard,* 102 Ill. 2d at 514-15, 468 N.E.2d at 1232-33.) Joining a number of other jurisdictions, the court also declared that in calculating damages for loss of society the trier of fact must include a setoff for the child's rearing expenses. (*Bullard,* 102 Ill. 2d at 518-19, 468 N.E.2d at 1234-35.) And in 1986, the court, in refusing "to draw a line based solely on the age of a child," extended the *Bullard* presumption of damages even further, to include the lost society of adult children. (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 120, 499 N.E.2d 1373, 1379.) "The intent of *Bullard,*" said the court, "was to recognize the *intrinsic* value of children to their parents." (Emphasis added.) 114 Ill. 2d at 120, 499 N.E.2d at 1379.

Whether to apply this presumption inversely, *i.e.,* to include the lost society of an unborn child within the damages recoverable under the Act, is a question the Illinois Supreme Court has not thus far squarely addressed. *Chrisafogeorgis v. Brandenburg* (1973), 55 Ill. 2d 368, 304 N.E.2d 88, however, provides considerable guidance in the resolution of this issue. In that case the court recognized that the Act gives parents the right to maintain an action for damages for the negligently caused death of their viable, yet stillborn, child. The court stated that by its decision it was avoiding "a legal rule [that] would produce the absurd result that an unborn child who was badly injured by the tortious acts of another, but who was born alive could recover [*Amann v. Faidy* (1953), 415 Ill. 422, 114 N.E.2d 412 (overruling *Allaire v. St. Luke's Hospital* (1900), 184 Ill. 359, 56 N.E. 638)] while an unborn child, who was more severely injured and died as a result of the tortious acts of another, could recover nothing." (55 Ill. 2d at 375, 304 N.E.2d at 92.) Other courts have said that denial of recovery in cases similar to *Chrisafogeorgis* rewards the tortfeasor "for his severity in inflicting the injury." (*Eich v. Town of Gulf Shores* (1974),

293 Ala. 95, 97, 300 So. 354, 355.) To be sure, it was because of the intolerably cruel disincentive fostered by the common law "that it was more profitable for the defendant to kill the plaintiff than to scratch him," that Lord Campbell's Act, the precursor of our Wrongful Death Act, was adopted in England. W. Prosser, Torts §127, at 902 (4th ed. 1971).

When in 1980 the General Assembly added section 2.2 to the Wrongful Death Act, it created a cause of action for the wrongful death of a fetus injured at any time after conception, thereby clearly establishing the status of the unborn child, for the purposes of the Act, as that of a "person," and removing the barrier of viability to the parental right of action which the supreme court had recognized seven years earlier in *Chrisafogeorgis*. (Pub. Act 81—946, §1, eff. Jan. 1, 1980.) Section 2.2 states in relevant part as follows:

"§2.2. The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default." (Ill. Rev. Stat. 1989, ch. 70, par. 2.2.)

Senator Rhoades introduced the bill with the following statement:

"This adds a cause of action under the Wrongful Death Act saying that the state of gestation of a human being when injury is caused or when it takes effect or at death shall not foreclose the maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default. Basically, there's a lot of case law right now, which indicates that the representative of the unborn child at viability can now bring a cause of action for wrongful death. [*E.g., Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, 304 N.E.2d 88; *Maniates v. Grant Hospital* (1973), 15 Ill. App. 3d 903, 305 N.E.2d 422.] There is even case law, which deals with preconception. [*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.] That is where the womb or blood supply or other injury has been caused to the mother prior to conception and then later an injury has been caused. But, ironically enough, there is no cause of action, at least, statutorily at the moment for any state of gestation, which may be prior to viability. This would close that particular gap in the law." 81st Ill. Gen. Assem., Senate Proceedings, May 17, 1979, at 165.

Finally, in *Jones v. Karraker* (1983), 98 Ill. 2d 487, 457 N.E.2d 23,

the supreme court, in reaffirming the estate's right to recover damages on the parents' behalf, recognized a presumption of pecuniary injuries for the wrongful death of a viable fetus. (*Cf. Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237 (presumption allowed for wrongful death of two-week-old infant).) The only evidence before the jury in *Jones* on the question of damages was that the fetus was viable and that absent defendant's negligence plaintiff would have given birth to a normal, healthy baby. However, in light of the pre-*Bullard* nature of the case, the court's recognition of the presumption was necessarily for loss of services and support only (see *Jones v. Karraker* (1982), 109 Ill. App. 3d 363, 371, 440 N.E.2d 420, 425-26, *aff'd* (1983), 98 Ill. 2d 487, 457 N.E.2d 23); therefore, the issue of whether a presumption of pecuniary injury exists also for the loss of the unborn child's society was not before it.

Defendant here, however, while acknowledging that parents may recover damages under the Act and that they are entitled to a presumption of pecuniary injury where they suffer a loss of their minor child's society, citing *Bullard*, argues that "neither the supreme court in *Chrisafogeorgis* and *Jones* nor the General Assembly has ever delineated the bases for awarding damages for pecuniary loss in the wrongful death of a viable fetus." Defendant further contends that "[w]hile recognizing that there is a pecuniary loss associated with that death, the supreme court has never stated nor implied that the parents of a stillborn fetus are entitled to damages for loss of society." Defendant also challenges plaintiffs' right to "maintain a cause of action under the Wrongful Death Act for the alleged loss of their stillborn child's anticipated services and support."

■ Yet, as plaintiffs correctly assert and as we have attempted to point out above, in 1973 when *Chrisafogeorgis* held that a stillborn child is a person for wrongful death purposes, and in 1980 when the General Assembly expressly stated in section 2.2 of the Act that the parents of a stillborn child's right to recovery may not be defeated because of the child's "state of gestation or development," the supreme court in *Hall* and *Knierim* had already interpreted the term "pecuniary injuries" broadly enough to include not only support, but also companionship, guidance, love, advice and affection, elements which the court went on to define as loss of society in *Elliott* (92 Ill. 2d at 536, 442 N.E.2d at 166). Accordingly, it cannot be successfully contended that the legislature naturalized section 2.2 into the Wrongful Death Act merely as a sterile attempt at lawmaking, or that it in any way diminished the definition of "pecuniary injuries" or the damages available to the parents of a stillborn child. Rather, the legislature clearly placed those parents–in

no less favorable a position than that accorded to the parents of a live-born child, for surely, the General Assembly must have been keenly aware of the interpretative accretions infused into the Act by the supreme court prior to the enactment of section 2.2. Moreover, defendant fails to apprehend that section 2.2, the function of which is to broaden the meaning of the word "person" in section 1, was grafted onto the Act as a constituent part of an organic law that provides "an *action* for *damages*" (emphasis added) (Ill. Rev. Stat. 1989, ch. 70, par. 1) and guarantees that "*in every such action* the jury may give such *damages* as they shall deem a fair and just compensation*" (emphasis added) (Ill. Rev. Stat. 1989, ch. 70, par. 2).

Thus the Act weds a right to a remedy for recovering wrongful death damages. (*Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352; see Note, *Bullard v. Barnes—Parental Recovery for Lost Society and Companionship of a Minor Child Under the Illinois Wrongful Death Act*, 34 De Paul L. Rev. 803, 810 & n.43 (1985) (hereinafter Note).) Any different interpretation would in effect nullify the General Assembly's express intent to act upon the guarantee in our constitution that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." (Ill. Const. 1970, art. I, §12.) In fact, it would appear that, insofar as there was any common law on the subject, plaintiffs' right would be recognized under the general theory *ubi jus, ibi remedium* (where there is a right, there is a remedy) (Black's Law Dictionary 1363 (5th ed. 1979)). See *Amann v. Faidy*, 415 Ill. at 430, 114 N.E.2d at 416, citing *Damasiewicz v. Gorusch* (1951), 197 Md. 417, 79 A.2d 550.

Furthermore, when the supreme court in *Jones* held that the parents of an unborn child were entitled to a presumption of substantial pecuniary injury, the court was surely aware that in *Elliott* it had ruled that "loss of the decedent's society, [and] companionship" are compensable "pecuniary injuries." (*Elliott*, 92 Ill. 2d at 539, 442 N.E.2d at 167-68.) And finally, in *Bullard*, in which the supreme court replaced the presumption of economic loss arising from the wrongful death of a minor child with a presumption of the loss of his society, the court cited with approval the case of *Volk v. Baldazo* (1982), 103 Idaho 570, 651 P.2d 11, among the several other authorities it relied upon which hold that damages for loss of society are recoverable by the estate of even a stillborn child. Indeed, *Volk*, along with several other jurisdictions, explicitly recognizes a presumption of loss of society in a parents' action for the wrongful death of an unborn child.

■ Defendant's challenge to plaintiffs' right to seek wrongful

death damages rests primarily on *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555, 515 N.E.2d 108, wherein, as noted above, the fifth district appellate court held that the Wrongful Death Act does not permit parents of a stillborn child to recover damages for the loss of that child's society. The *Hunt* court expressed concern that the presumption of lost society in such a case would be irrebuttable, because without a loss of existing society, defendants would be unable to prove that the unborn child was "estranged"; unless the child had already been born, no society could have been exchanged, and therefore, none lost. According to the court, "birth is a proper point at which to begin to measure the loss of a child's society," because "the initial bonding which takes place at birth cannot be dismissed so easily," and it is the "length, intensity and quality" of the relationship between parent and child that determine the magnitude of the loss. (158 Ill. App. 3d at 79, 510 N.E.2d at 1326.) Finally, the court felt that allowing damages for the loss of a stillborn child's society would confuse loss of society with recovery for the parents' grief over the child's death.

But in drawing the line for recovery at birth, the court in *Hunt* completely overlooks the fact that the supreme court rejected the requirement of "live delivery" as "logically indefensible" 14 years earlier and held instead that it considered "more realistically and reasonably that viability is the appropriate line of demarcation." (*Chrisafogeorgis*, 55 Ill. 2d at 374, 304 N.E.2d at 92.) Indeed, in *Villamil v. Elmhurst Memorial Hospital* (1988), 175 Ill. App. 3d 668, 529 N.E.2d 1181, *appeal denied* (1989), 124 Ill. 2d 562, 535 N.E.2d 922, the court, in following *Bullard*, allowed the parents of a newborn child who suffered a fatal fall to the floor immediately after birth to rely on a presumption of lost society. Accordingly, we decline to follow *Hunt's* rejection of the very essence of *Chrisafogeorgis* and the cases following it, or to join in its failure to give deference to the will of the legislature in providing parents with redress for the wrongful death of their unborn children as expressed in section 2.2 of the Wrongful Death Act, for where existing law imposes a duty, violations of which are compensable if they cause death even an instant after birth, nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because death was caused in the womb. Moreover, whatever gloss one may want to put on the case law, we have not the organs with which to perceive that the passage of section 2.2 was but a legislative exercise in shoveling smoke.

The court's statement in *Hunt* that there can be no society between a mother and a fetus could not have had any support in the

record in that case, since it was decided purely on "whether the trial court erred in striking plaintiffs' claim for the loss of society of Baby Hunt, a stillborn fetus." (*Hunt*, 158 Ill. App. 3d at 77, 510 N.E.2d at 1325.) It cannot be gainsaid that a fetus is physically bound to its mother; and, as plaintiffs aptly state, "there is substantial scientific and medical evidence that the unborn child's impact upon the mother is more than mere physical impact, and more than mere tissue-pressure; it is an exclusive communication beyond the ken of outsiders," as to which plaintiffs were evidently prepared to introduce expert testimony. (See, *e.g.*, R. Rubin, Maternal Identity and the Maternal Experience (1984); Wunsch, Parental Recovery for Loss of Society of the Unborn: *The Plaintiff's Perspective*, 77 Ill. B.J. 538, 541 (1989) (hereinafter Wunsch).) And although defendant argues that an expectant mother merely romanticizes about an idealized future relationship with her child rather than experiencing an existing society, we do not deem it to be unwarranted for parents to entertain a reasonable expectancy of anything but the felicitous society of the children they wish to bear and beget, for even if there were no existing societal bond between a mother and her unborn child at the time of injury or death, the Act by its very nature contemplates compensating parents for their *future* loss caused by defendant's negligence or wrongful act. Contrary to *Hunt*, the parents' right to recovery for loss of society does not depend upon whether there has been an exchange of society in the past. "The established rule is that if the wrongful death action is brought for a surviving spouse or lineal next of kin, the law presumes substantial pecuniary damages arising from the relationship alone, and it is immaterial whether they received pecuniary assistance from the deceased in the past." (*Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, 89, 470 N.E.2d 34, 37; *Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 352, 525 N.E.2d 258, 264.) Rather, it depends upon whether *but for* defendant's negligence society *would have been* exchanged. Other States, having wrongful death acts similar to ours, reach the same result: that there may have been no society in the past is irrelevant; it is the loss into the future which is compensable. See, *e.g., Green v. Bittner* (1980), 85 N.J. 1, 15-17, 424 A. 2d 210, 218.

Moreover, nowhere does the law require that parent and child consciously communicate or exchange society. Indeed, *Bullard*, in establishing a presumption of loss of society in wrongful death cases involving minors, holds that such loss can exist even when not affirmatively shown. Therefore, until we enter that 25th century nightmare utopia depicted in Aldous Huxley's *Brave New World*, when science

and technology will have achieved such complete tyranny over mankind that human beings will be chemically produced and "conditioned" for life in bottles, and where, consequently, parents can have no expectation of bearing or begetting their own children or even seeing them after "birth," we may confidently presume that the enjoyment of a child's society is a reasonably expectable consequence of its prenatal development. Further, our supreme court on more than one occasion has found it necessary to remind tortfeasors who advance the argument made by defendant in the case *sub judice* that: " '[I]t is not the privilege of him whose wrongful act caused the loss to hide behind the uncertainties inherent in the very situation his wrong has created.' " (*Elliott*, 92 Ill. 2d at 540-41, 442 N.E.2d at 168, quoting *Smith v. Detroit* (1972), 388 Mich. 637, 202 N.W.2d 300.) And in *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 334-35, 178 N.E.2d 303, 307, the court recalled the words of the venerable Justice Cardozo that " '[i]t would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied.' [*Van Beeck v. Sabine Towing Co.* (1937), 300 U.S. 342, 350-51, 81 L. Ed. 685, 690, 57 S. Ct. 452, 456-57]."

The *Hunt* court was also concerned that it would be impossible to rebut the presumption of lost society in the case of a stillborn child. We fail to understand, however, why such a presumption would not be just as rebuttable as it is in the case of a child who is born alive but who is injured and dies immediately after birth, as in *Villamil*. Neither *Hunt* nor defendant here presents us with any concept of what the differences would be in the elements of a rebuttal as between the two cases other than the time of death. Here, again, it becomes necessary to invoke *Chrisafogeorgis*: "[I]n drawing dividing lines or borders for rights or disabilities, lines which unnecessarily produce incongruous and indefensible results should be avoided." (*Chrisafogeorgis*, 55 Ill. 2d at 375, 304 N.E.2d at 92.) A presumption is "an inference which common sense draws from the known course of events." (*Bullard*, 102 Ill. 2d at 517, 468 N.E.2d at 1234.) In *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237, the supreme court explained the difference between conclusive and rebuttable presumptions as follows:

> "Conclusive presumptions cannot be contravened by opposing evidence [citation]; whereas rebuttable presumptions may be disputed and eliminated if they do not correspond with the circumstances actually proved. A rebuttable presumption, standing alone, may establish a *prima facie* case, thereby relieving

the party in whose favor it arises from presenting further evidence and requiring the opposing party to produce contrary evidence to avoid an unfavorable verdict. However, such a presumption does not preclude the consideration of contrary facts. [Citations.]

Under those rules relating to presumptions, the presumption of pecuniary loss involved here would, in the absence of any evidence of such loss, establish a *prima facie* case for plaintiff, and merely shift to defendant the burden of establishing contrary facts which the jury would be obliged to weigh. Implicit in the right to weigh the presumption is the right to give it no weight at all." (41 Ill. 2d at 239-40, 242 N.E.2d at 240.)

The *Flynn* court ultimately held that the issue of damages in a wrongful death case is wholly within the province of the jury and concluded that it was proper for the jury in that case to find liability for the wrongful death of a two-week-old child, but to award no damages in view of evidence that the child was suffering from incurable congenital physical defects which severely impaired her health. *Flynn* thus illustrates that a rebuttable presumption of pecuniary injuries does not necessarily guarantee recovery. It does, however, appropriately shift the burden of coming forward with proof that the damages are minimal or nonexistent onto the party who created the uncertainty surrounding the damages by causing the wrongful death.

The supreme court stated in *Bullard* that defendants may rebut the presumption of the loss of a minor child's society "by presenting evidence that a parent and child were estranged." (*Bullard*, 102 Ill. 2d at 517, 468 N.E.2d at 1234.) Defendant's contentions and *Hunt* to the contrary notwithstanding, we do not interpret the court's illustration as making evidence of "estrangement" the exclusive method of rebuttal. In fact, with respect to the loss of an unborn child's society, we perceive numerous ways of rebutting the presumption. For example, defendant may present evidence that, irrespective of defendant's negligence, "the child was unhealthy, or unlikely to live beyond minority" (*Jones v. Karraker* (1982), 109 Ill. App. 3d 363, 371, 440 N.E.2d 420, 426, *aff'd* (1983), 98 Ill. 2d 487, 457 N.E.2d 23; *Flynn*, 41 Ill. 2d 236, 242 N.E.2d 237); that the child was unlikely to live beyond birth; that the child would not have lived because the mother indented to obtain an abortion (see *Light v. Proctor Community Hospital* (1989), 182 Ill. App. 3d 563, 538 N.E.2d 828 (plaintiff, who learned she was pregnant in the course of or after undergoing a thyroid scan and terminated the pregnancy, not allowed to maintain a cause of action on behalf of her unborn child under the Wrongful Death Act, alleging

that defendants were negligent in failing to determine if she was pregnant prior to the scan procedure)); that prior to the child's birth the parents decided to place the child for adoption; or that prior to the child's birth the parent claiming injury abandoned the family (see *Gabriel v. Illinois Farmers Insurance Co.* (1988), 171 Ill. App. 3d 663, 525 N.E.2d 864 (parent abandoned the child at a young age and was therefore estranged)). Nor should we lose sight of the fact that it is still traditional in our law that after hearing any contrary evidence and weighing the facts, the trier of fact bears the ultimate responsibility of deciding whether to award damages.

■ Relying on *Hunt*, defendant also maintains that a jury would too easily confuse damages for pure loss of society with damages resulting from prejudice, sympathy or passion for the bereaved parents, which are impermissible bases for civil recovery in Illinois, especially in a wrongful death action. (See also *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 460 N.E.2d 464.) However, Illinois courts have long considered that the loss of future society and companionship is sufficiently distinct from the mental anguish associated with bereavement to permit the issue of loss of society damages to go to the jury with proper instructions. (*Bullard*, 102 Ill. 2d at 514-15, 468 N.E.2d at 1233 (death of a minor child); *Elliott*, 92 Ill. 2d at 539, 442 N.E.2d at 167 (death of spouse); *Major*, 18 Ill. at 359-60 (death of minor child).) We are satisfied that this practice retains today all of the vigor with which it was endowed 133 years ago in *Major*, even in the case of a stillborn child. While loss of services and support, and not loss of society, was the issue in *Major*, the supreme court nevertheless approved the instruction given by the trial court that "[t]he mental sufferings or grief of survivors * * * are not proper elements in the calculation of damages." *Major*, 18 Ill. at 354, 359-60.

■ Departing from the issues decided in *Hunt*, defendant contends that damages for the loss of a stillborn fetus' society are unduly speculative as a matter of law and that a jury charged with calculating an award essentially holds a blank check, making the damages potentially punitive in nature. As we have noted above in our discussion of certain of the other arguments made by defendant, "[w]hatever could be said in this regard against the claim of an unborn child could be said as well against the claim of a two-month-old child." (*Dunn v. Rose Way, Inc.* (Iowa 1983), 333 N.W.2d 830, 833.) While it is true that punitive damages are not recoverable under the Wrongful Death Act (*Howe v. Clarke Equipment Co.* (1982), 104 Ill. App. 3d 45, 432 N.E.2d 621), our supreme court has held in the case of a bereaved spouse, that damages for the loss of society and companionship "may

not be the most tangible items, but a jury is capable of putting monetary worth on them." (*Elliott*, 92 Ill. 2d at 540, 442 N.E.2d at 168.) Moreover, in both *Chrisafogeorgis* and *Jones* the court concluded that the difficulty of ascertaining damages resulting from the death of an unborn child should not bar the right of action. (*Jones*, 98 Ill. 2d at 496-97, 457 N.E.2d at 25; *Chrisafogeorgis*, 55 Ill. 2d at 371-72, 304 N.E.2d at 90; see *Jones*, 98 Ill. 2d at 502, 457 N.E.2d at 30 (Simon, J., dissenting); see also *Major*, 18 Ill. at 359-60.) The supreme court has noted that "[i]t is unquestioned that there can be a recovery for the wrongful death of a child who lives but a moment after birth"; and it has further observed that assessing the extent of the parents' loss in such a case is neither different nor more difficult than determining damages in the case of a child who does not survive birth. (*Chrisafogeorgis*, 55 Ill. 2d at 372, 304 N.E.2d at 90.) Significantly, the court in *Jones* deferred to legislative prerogative in refusing to put a maximum limit of $20,000 on damages recoverable for the wrongful death of a viable fetus. (*Jones*, 98 Ill. 2d at 491-92, 457 N.E.2d at 25.) It is not surprising that the legislature has declined the invitation, for by 1967 it had removed all existing limits for recovery from the Act. (1967 Ill. Laws 3227; see Note, 34 De Paul L. Rev. at 810 n.42.) We therefore decline to subscribe to what seems to be defendant's theory, that simply because it has caused the measurement of damages for loss of Christopher's society to be more difficult to prove by causing his death prior to birth, his parents should be deprived of those damages.

■ Thus, given the legislature's clear concern for the parents of stillborn children and "the trend in our more recent decisions under the Wrongful Death Act *** to expand the scope of pecuniary injury to encompass nonmonetary losses" (*Bullard*, 102 Ill. 2d at 514, 468 N.E.2d at 1232), we are led ineluctably to the conclusion that damages for the loss of a stillborn child's society are not only an element of pecuniary loss recoverable in an action brought under the Act, but that the parents are also entitled to a presumption thereof. We also hold that although plaintiffs allege in their complaint that Yolanda was being treated for a full-term pregnancy when the negligent acts occurred, pursuant to section 2.2 of the Act, plaintiffs are not obligated to establish viability at trial.

■ Finally, plaintiffs seek the right to prove the loss of Christopher's services and support. As we have noted earlier, the supreme court removed the presumption of the loss of a minor child's services and support because the court felt that it no longer comports with the realities of modern society. (*Bullard*, 102 Ill. 2d 505, 468

N.E.2d 1228.) But the court went on to state that recovery may still be had "in the rare case where the child earned income that was used to support the family," provided these facts are established at trial. (*Bullard*, 102 Ill. 2d at 517, 468 N.E.2d at 1234.) Here again, we do not read this language as precluding other means of proof. The limitation in *Bullard* clearly pertains to the *presumption* of substantial loss, not whether the damages for loss of services and support can be recovered *if proved*. (*Schmall*, 171 Ill. App. 3d 344, 525 N.E.2d 258.) Nor can the present case be satisfactorily distinguished from that of a child who expires but a few heartbeats after birth and whose parents consequently have a right under *Bullard* to prove their economic loss, for the damages to which plaintiffs are entitled for loss of Christopher's services and support are the economic and financial contribution he could have been expected to make *had he lived*.

In this connection, although what we are about to say applies with equal force as responses to the preceding arguments made by defendant herein, it is worthy of note that, in promulgating the Act more than 1⅓ centuries ago, when the study of grammar was practiced more rigorously and was rendered more homage than we accord it today, the legislature carefully and expressly framed the phrase at issue here in the subjunctive mood: *"if death had not ensued."* (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 70, par. 1.) The term "subjunctive" is defined in the American Heritage Dictionary of the English Language (1969) as "[d]esignating a verb form or set of forms used in English to express a *contingent or hypothetical action*; compare *indicative*"; and "indicative" is defined in the same source as "[p]ertaining to or designating a verb mood used to indicate that the denoted act or condition is an *'objective fact.'* " (Emphasis added.) (See also Webster's Third New International Dictionary 1150, 2276 (1981).) Therefore, even without a presumption, having alleged pecuniary losses, plaintiffs should be given the opportunity to prove such damages as they may be entitled to "if death had not ensued." (See *Schmall*, 171 Ill. App. 3d 344, 525 N.E.2d 258.) At the very least, defendant ought not be heard to complain about the difficulties of the parents' proof, for it is their burden, and not the defendant's, to establish the existence and extent of their damages. Besides, this case is before this court, as it was before the trial court, on a motion which concedes the well-pleaded fact of damages.

In any event, the supreme court, in establishing the status of the stillborn Chrisafogeorgis child as a person under the Act, reaffirmed what it had asserted in *Amann*:

" 'We are not impressed with the reasoning that a clear remedy

for an injustice should be denied because a wrong is not readily susceptible of proof.' [Citation.] \*\*\* '[T]he right to bring an action is clearly distinguishable from the ability to prove the facts. The first cannot be denied because the second may not exist.' " (*Chrisafogeorgis*, 55 Ill. 2d at 371-72, 304 N.E.2d at 90, quoting *Amann v. Faiady* (1953), 415 Ill. 422, 431.) We need also to be reminded that here, of course, we are considering the issue of the right to bring an action, not the evidence in support of the complaint. We therefore hold that the argument grounded on claimed difficulties in showing loss of services or support does not require the denial of a right of action, there appearing to be no reason why the amount of pecuniary loss in the case of a stillborn child cannot be determined on the basis of factors similar to those our courts consider when an infant is the victim of a wrongful death. (See Kruger, *Wrongful Death of the Unborn*, 13 J. Fam. L. 99, 106-07 (1973-74) (hereinafter Kruger).) Such factors include the "child's age, sex, ambition, physical and mental characteristics, parents' social and economic status, and employment of other children in the family." (Kruger, 13 J. Fam. L. at 106; see also C. McCormick, Handbook on the Law of Damages §101 (1935).) As Kruger notes:

"While not all these factors are present in a stillborn child, it would appear that enough factors are present to enable a jury to calculate the pecuniary value of his life to his parents with little more speculation than is used in calculating the pecuniary loss of an infant child." (Kruger, 13 J. Fam. L. at 106-07.)

For example, in *Pehrson v. Kistner* (1974), 301 Minn. 299, 222 N.W.2d 334, under a statute limiting recovery to pecuniary loss, there was testimony that the unborn child would have been expected to assist her family in the operation of their dairy farm as well as other testimony as to the value of her services. The evidence showed also that in the absence of family assistance, outside help would have to be hired in order to operate the farm. In sum, the problems attendant upon the measure of damages recoverable for wrongful death afford no apparent basis for denying the damages recoverable for the wrongful death of an unborn child as compared to the recovery allowed for the wrongful death of a minor child.

In concluding, it is important to keep in mind that in enacting the Wrongful Death Act the legislature explicitly recognized the legal right of *survivors* to be compensated for *their* loss resulting from the victim's death. Insofar as that compensation is concerned, there may be a quantitative but not a qualitative difference between the damages caused by the death of a newborn and that of a viable fetus; the dam-

ages reflect the same right of the parents—to recover the loss due to the death of their child.

Accordingly, we reverse the holdings of the circuit court and remand the cause for trial.

Reversed and remanded.

HARTMAN and BILANDIC, JJ., concur.